IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE RAMIREZ, Inmate #61217-079, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| HARRELL WATTS, G.L. HERSHBERGER, E.A. STEPP, TERRY S. BAKKE, J. KRUGER, AUGUSTINE F. LI, J.F. CASTILLO, M. CROSS, R. DAVIS, H. LAPPIN, H. LYLE, KATHLEEN HAWK SAWYER, and C. WELCH, | ) CIVIL NO. 04-670-MJR |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, an inmate in the United States Penitentiary in Marion, Illinois, brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such

relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Upon careful review of the complaint and any supporting exhibits, the Court finds that none of the claims in the complaint may be dismissed at this point in the litigation.

**FACTUAL BACKGROUND**

Plaintiff states that from the beginning of his stay at USP-Marion in November 2000, he has suffered from osteoarthritis, degnerative tears of the meniscus in both knees, and damage to the anticular curciate ligament of the right knee.  These conditions cause unbearable and extreme pain and instability to the point of causing Plaintiff to fall.  He is restricted from the normal activities of sports, running, climbing, but he is also unable to walk without pain or fear of falling.  Plaintiff states that all defendants were responsible for denying Plaintiff medical treatment for his knees, causing further deterioration, discomfort, and progressive swelling, pain and inflexibility.

Beginning in 2001, Plaintiff wrote letters to Defendant Hawk-Sawyer, Director for the Federal Bureau of Prisons, requesting medical treatment from Defendants Bakke and Li.  He received no response.  Defendants Bakke and Li denied Plaintiff medical treatment for his knee problems between February 2001 and March 2002 and denied any medication for pain.  Defendant Stepp denied Plaintiff proper medical treatment between February 2001 and March 2002 and refused to provide him with proper housing for his disabilities.  Defendant Castillo "observed" Plaintiff's right knee and denied Plaintiff's requests to see an orthopaedic specialist.  The conduct of Defendants Bakke, Stepp, Li, and Castillo to delay treatment caused further deterioration to his knees.

On November 13, 2001, Plaintiff requested treatment for his knees. Defendant Li informed Plaintiff that he would be placed on a list to see a specialist. Plaintiff's grievances requesting treatment were denied. Plaintiff states that his knees finally "gave out on him," the right one on April 15, 2002, and the left on May 4, 2002, both before he received any treatment. Plaintiff claims that the delay in treatment contributed to the deterioration of his knees.

Plaintiff saw Dr. Morgan (not a defendant) on February 8, 2002. He recommended surgery. Between that date and a July 2002 appointment with Dr. Morgan, an MRI of Plaintiff's left knee showed a "tear involving the posterior aspect of the left medial meniscus" and an MRI of the right knee showed "edema changes and a partial tear of the anterior curciate ligament" and a "tear involving the posterior aspect of the right medial meniscus."

In October 2002, Plaintiff was transferred to the Medical Center for Federal Prisoners in Springfield, Missouri. On January 3, 2003, Dr. Marion L. Wolf (not a defendant) performed surgery on the right knee and on March 31, 2003, he performed surgery on the left knee.

On July 1, 2003, Plaintiff returned to USP-Marion. Plaintiff alleges that Defendants Stepp, Lyle, Bakke, Cross, Welch, and Castillo knew that Plaintiff could not walk very well after the surgeries and that he was in pain, but they still denied him proper housing to accommodate his disability. Plaintiff states that after his return to Marion, on July 4, 2004, an MRI showed "increased signal of the bone marrow the medial distal femoral condyle consistent with a bone contusion. The anterior cruciate ligament shows signal within it consistent with a strain, but not a complete tear, and tears to the meniscus." In the right knee, "the posterior horns of both menisci show tears with some mild degeneration of the anterior horns of those same menisci." Both knees showed osteoarthritis. Plaintiff claims that the failure to accommodate his disability by Defendants Stepp, Lyle, Bakke,

Cross, Welch, and Castillo, was intentional and contributed to further deterioration to his knees.

Plaintiff saw Dr. Morgan for a follow up to the July 2004 MRIs. Plaintiff states that Dr. Morgan disregarded the seriousness of his condition by not acknowledging the injuries in Plaintiff's left knee and right knee swelling that Plaintiff had also been experiencing after a May 2004 incident where Plaintiff knelt and heard a "pop" in his right knee. Dr. Morgan took x-rays and told Plaintiff that if the x-rays were "negative" he would reevaluate Plaintiff. Dr. Morgan also discontinued the use of a Neoprene knee sleeve. Plaintiff argues, however, that an x-ray would not have revealed tissue damage, and that Dr. Morgan's x-rays were inadequate to determine the exact condition of Plaintiff's knees. Plaintiff claims that Dr. Morgan "trumped up" his medical report to "satisfy" defendants Lyle, Bakke, Stepp, Cross, Welch, and Castillo. Dr. Morgan also denied Plaintiff crutches, a cane, or a wheelchair, which greatly limited Plaintiff's movement. He had to wait for a staff member to provide him with a wheelchair before he could go anywhere. A number of times he had to crawl to get to the front of his cell to receive medication. Plaintiff argues that the failure to provide him with further surgery exacerbated the existing problem. Plaintiff claims that Defendants Davis and Warden Bledsoe (not a defendant) joined in covering up the failure to properly treat Plaintiff. Plaintiff states that Senator Richard Durbin (not a defendant) was also involved in the cover-up.

Plaintiff's well-written memorandum in support of his complaint describes how each defendant violated his constitutional rights. Defendants Lyle and Krueger denied his requests for further surgery after Plaintiff continued to experience problems upon his return to Marion in July 2003. Defendants Krueger, Bakke, Lyle, Davis, Cross, Castillo, and Welch did not provide Plaintiff with crutches, a knee brace, or any type of medical device that would stabilize Plaintiff's gait and

speed healing. This denial forced Plaintiff to have to crawl to the front of his cell to receive medications. Defendants Krueger, Lyle, and Davis (and later Warden Bledsoe, who is not a defendant) intentionally misinterpreted Dr. Morgan's September 2004 medical report and used the misinterpretation as proof in denying Plaintiff further treatment. Defendants Cross, Welch, Castillo, and Lyle refused to provide Plaintiff any type of pain medication, even though it was obvious his condition caused him a great deal of pain. Finally, Defendants Sawyer, Lappin, Stepp, and Davis failed to provide "suitable quarters" to accommodate Plaintiff's disability, leading to further deterioration of his knees. Plaintiff claims, based on these allegations, that all defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs.[1]

## LEGAL STANDARDS

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S.

---

[1] The Court notes that prior to transfer of the action to this district from the Western District of Missouri, the Honorable Richard E. Dorr, United States District Judge, dismissed Harrell Watts and G.L. Hershberger as defendants from the action.

> at —, 114 S.Ct. at 1977.  As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.*  The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997).  However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm....  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm.  The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*,

82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction).  However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur.  *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Plaintiff alleges that he did receive orthopedic surgery on both of his knees, but that the excessive delay in giving him that surgery made his condition worse.  He also argues that he did not receive proper accommodation of his disability after his surgeries, leading to further deterioration of his knees.  The Court cannot find that these delays and refusal to accommodate did not constitute deliberate indifference to a serious medical need.  As such, Plaintiff will be allowed to proceed on his medical claims.

## DISPOSITION

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for *Defendants Sawyer, Lappin, Krueger, Bakke, Li, Lyle, Cross, Welch, Castillo, Stepp, and Davis*.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the amended complaint (Doc. 33), including copies for the United States Attorney and the Attorney General, to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on *Defendants Sawyer, Lappin, Krueger, Bakke, Li, Lyle, Cross, Welch, Castillo, Stepp, and Davis* in the manner specified by Rule 4(d)(2) of the Federal Rules of

Civil Procedure, *and* on the United States Attorney for the Southern District of Illinois and the Attorney General of the United States, Washington, D.C., pursuant to Rule 4(I) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Bureau of Prisons who no longer can be found at the work address provided by Plaintiff, the Bureau of Prisons shall furnish the Marshal with the defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from the B.O.P. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional

copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon Defendants or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED this 23rd day of August, 2006.**

                                                **s/ Michael J. Reagan**
                                                **MICHAEL J. REAGAN**
                                                **United States District Judge**